# No.24-1549 & 24-1223

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

DW AINA LE'A DEVELOPMENT, LLC.,

*Plaintiff-Appellant/Cross-Appellee,*

v.

STATE OF HAWAII, LAND USE COMMISSION;
STATE OF HAWAII AND
DOE GOVERNMENTAL UNITES 1-10,

*Defendants-Appellees/Cross-Appellants.*

On Appeal from the United States District Court
for the District of Hawaii
Case: CV 17-00113-SOM-WRP
Honorable Susan Oki Mollway

**PLAINTIFF-APPELLANT/CROSS-APPELLEE'S THIRD BRIEF**

Sang J. Peter Sim
**SIM & DEPAOLA, LLP**
42-40 Bell Blvd, Ste 405
Bayside, New York 11361
(718) 281-0400
petersimesq@yahoo.com
*Appellate Counsel for Plaintiff-Appellant*
DW Aina Le'a Development, LLC.,

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ... i

TABLE OF AUTHORITIES ... ii

PRELIMINARY STATEMENT ... 1

ARGUMENTS ... 2

    A. AINA LE'A INC. ASSIGNED ALL OF ITS RIGHTS IN THE TAKINGS CLAIM TO DW ... 2

    B. ALTERNATIVELY, AINA LE'A INC. AND AINA LE'A LLC SHOULD BE PERMITTED TO BE JOINED AS PARTIES UNDER FRCP 17(a)(3) ... 3

    C. THE SCHEDULING ORDER SHOULD BE RESET TO PERMIT THE SUBMISSION OF AN EXPERT REPORT ... 4

    D. DW SHOULD HAVE BEEN PERMITTED TO ASSERT AINA LE'A INC. DAMAGES FOR AN AMOUNT THAT IS NOT LESS THAN $17 MILLION ... 5

    E. STATE'S CROSS APPEAL ... 6
        1. UNDIVIDED FEE RULE SHOULD NOT PRECLUDE DW'S CLAIMS ... 6

        2. BRIDGE AND DW'S DAMAGES ARE SIGNIFICANTLY DIFFERENT SO THAT ISSUE AND CLAIM PRECLUSION WOULD NOT BE APPLICABLE IN THIS CASE ... 8

        3. THE DISTRICT COURT CORRECTLY HELD THAT ROBERT WESSELS CAN PROVIDE TESTIMONY BASED ON HIS PERSONAL KNOWLEDGE ALONG WITH HIS EXPERIENCE AND TRAINING ... 11

# TABLE OF AUTHORITIES

**Cases** — **Page**

Dubuque Stone Products Co. v Fred L. Gray Co.,
356 F2d 718 [8th Cir 1966] .................................................... 2

Shaw v Railway Co.,
100 W Va 368 [W Va 1925] .................................................... 3

City & County of Honolulu v Market Place, Ltd.,
55 Haw 226 [Haw 1973] .................................................... 6

Goodman v U.S.,
298 F3d 1048 [9th Cir 2002] .................................................... 4

Lightning Lube, Inc. v Witco Corp.,
4 F3d 1153 [3d Cir 1993] .................................................... 11,12

People ex Rel. Dept. Pub. Wks. v Lynbar, Inc.,
253 CalApp2d 870 [Cal Ct App 1967] .................................................... 7

United States ex rel. Technica, LLC v Carolina Cas. Ins. Co.
[SD Cal, Apr. 11, 2012, No. 08-CV-01673-H (KSC)] .................................................... 11

United States v 131.68 Acres of Land, More or Less,
695 F2d 872 [5th Cir 1983] .................................................... 7

United States v Goodheim,
686 F2d 776 [9th Cir 1982] .................................................... 11

Wray v Lumber Co.,
101 W Va 619 [W Va 1926] .................................................... 3

**Statues** — **Page**

Fed. R. Evid. 701 .................................................... 11

Fed. R. Evid. 702 .................................................... 11

Fed.R.Civ.P. 17(a) .................................................... 3,4

## **PRELIMINARY STATEMENT**

As a threshold matter, it appears that the State is in agreement that Aina Le'a Inc. assigned its rights to pursue the takings claim to DW by providing that:

> "DW subsequently produced a 2022 assignment of the claims *back to DW*. That assignment means it is DW, not Aina Le'a, that is the real party in interest as to the claims alleged here."

*See* State's Brief page 13.

As such, if DW is the real party in interest because it was assigned all of Aina Le'a rights in the claim, then DW should have been permitted to assert all claims in this action. It is exactly this point that DW is emphasizing on this appeal, namely that DW is the real party in interest because it was assigned all of Aina Le'a's rights or if this is not the case, then DW should have been permitted to add Aina Le'a as a real party in interest in the case. Further, contrary to the State's argument, it is submitted that DW asserted a claim against the State for all damages arising from the takings. These damages were not limited solely to damages belonging solely to DW all damages sustained by DW and its subsidiaries.

1

# ARGUMENTS

### A. AINA LE'A INC. ASSIGNED ALL OF ITS RIGHTS IN THE TAKINGS CLAIM TO DW

The State has acknowledged that Aina Le'a Inc. has assigned all of its rights to DW for DW to prosecute all of Aina Le'a's claims against the State that arose from the improper reversion of land from urban designation to agricultural designation. Courts have found that assignments, executed after suit has been filed but before trial, are valid so long as the defendant suffers no prejudice. *Dubuque Stone Prods. Co. v. Fred L. Gray Co.,* 356 F.2d 718, 723–24 (8th Cir.1966).

It is submitted that this assignment from Aina Le'a gave DW the present right to pursue the litigation prosecuting Aina Le'a's damages as well as DW's damages. Both Aina Le'a Inc. and Aina Le'a LLC ratified through a written consent agreement agreeing and granting DW Aina Le'a Development LLC an assignment of its rights to prosecute the takings claim against the State. As such, this agreement permits the Plaintiff to present all of their claims at trial. Therefore, the District Court should have permitted Plaintiff-Appellant to present Aina Le'a Inc. and Aina Le'a LLC's damages against the Defendants.

Where an assignment is made by plaintiff in an action after suit brought, the assignee acquires the right to control the action, and his rights as assignee will be protected. The assignment operates as an implied authority from the assignor to the assignee to use the assignor's name to protect the rights assigned; but there must be notice of the assignment to bind the debtor." 5 C. J. 982, 984. *See* also *Shaw* v. *Railway Co.*, 100 W. Va. 368; *Wray* v. *Lumber Co.*, 101 W. Va. 619; *Tyler, Rec'r*. v. *Ricamore*, 87 Va. 466.

### B. ALTERNATIVELY, AINA LE'A INC. AND AINA LE'A LLC SHOULD BE PERMITTED TO BE JOINED AS PARTIES UNDER FRCP 17(a)(3)

Alternatively, in the event that it is held that the assignment of Aina Le'a's rights were not properly assigned to DW, then it is submitted that the District Court should have permitted adding additional parties pursuant to Rule 17(a) since Aina Le'a Inc. is the real party in interest since all damages were sustained by Aina Le'a.

It is well settled that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action

3

had been commenced in the name of the real party in interest. Rule 17 applies to failure to prosecute an action in the name of the real party in interest and allows the real party in interest to ratify, join, or substitute and the action to proceed. Federal Rule of Civil Procedure 17(a), which addresses real parties in interest, provides that an action shall not be dismissed. *Goodman v. United States,* 298 F.3d 1048 (9th Cir. 2002).

It is certain that Aina Lea Inc. and Aina Lea LLC are the real party in interest. Therefore, it is submitted that the Plaintiff-Appellant should have been permitted to add Aina Le'a Inc. and Aina Le'a LLC as additional parties, or at the very least, permit the Plaintiff-Appellant to assert the claims belonging to these entities pursuant to the assignment of rights agreement between the relevant parties.

### C. THE SCHEDULING ORDER SHOULD BE RESET TO PERMIT THE SUBMISSION OF AN EXPERT REPORT

The Plaintiff-Appellant made an application to reset the scheduling order upon remand of the instant case following the Decision from the Ninth Circuit. One of the reasons being that the deadline to submit an expert report expired during the pendency of the prior summary judgment motions, which required the Plaintiff-Appellant to exert enormous resources to provide supplemental responses with multiple court ordered hearings. As such, the

4

Plaintiff-Appellant requested that the deadline to submit expert reports be modified to permit the submission of expert reports.

In this case, it is understood that on the prior summary judgment motion, the Court granted the Defendants' motion and dismissed the Plaintiff's complaint in its entirety. The matter was appealed to the Ninth Circuit Court of Appeals and the decision and order was reversed and remanded. Upon remand, the Court conducted a conference and held that Plaintiff may not designate an expert and reset the time and granted an extension of time for the Defendants to submit their expert report.

**D. DW SHOULD HAVE BEEN PERMITTED TO ASSERT AINA LE'A INC. DAMAGES FOR AN AMOUNT THAT IS NOT LESS THAN $17 MILLION**

In this case, DW was entitled to receive $17 million from Aina Le'a Inc. As such, at a minimum, DW should have been permitted to prosecute Aina Le'a Inc. claims up to $17 million. However, the District Court held that DW would not be permitted to prosecute any damages belonging to Aina Le'a Inc even though Aina Le'a assigned all of its claims to DW, Aina Le'a is the real party in interest and DW was entitled to receive $17 million from Aina Le'a.

5

The District Court ruled that Aina Lea Inc. and Aina Lea LLC would not be permitted to present its claims that are separate and apart from DW's claims. However, as this Court is aware, DW has always maintained that there is a debt that Aina Le'a owes to DW, namely $17 million. As such, the first $17 million belongs to DW and thus, these are DW's claims. Since these are DW's claims, DW should be permitted to offer evidence to support a capped $17 million in damages that belongs to Aina Le'a. This issue alone would not confuse the issue or the jury, and if there are any issues to that effect, a jury instruction can be given at the time of trial. As such, DW should have been permitted to present $17 million of damages sustained by Aina Le'a since this amount belongs to DW.

### E. STATE'S CROSS APPEAL

#### 1. UNDIVIDED FEE RULE SHOULD NOT PRECLUDE DW'S CLAIMS

Contrary to the arguments made by the State, the District Court did not err in rejecting the State's undivided fee rule argument to preclude the damages sustained by DW.

*City and County of Honolulu v. Market Place, Ltd.*, 55 Haw. 226, 517 P.2d 7 (1973) makes clear that the State is only obligated to pay the fair market

value of the unencumbered fee value." In *Market Place*, the City and County of Honolulu initiated eminent domain proceedings for oceanfront land in order to extend Kapi'olani Park. 55 Haw. at 227, 517 P.2d at 11. As compensation for the taking, the circuit court ordered $86,373.61 payable to the lessee of the property and $950,198.00 payable to the owner, which were two separate entities. 55 Haw. at 229, 517 P.2d at 12. On appeal, the Hawai'i Supreme Court explained the general rule "of determining just compensation for property subject to several, independently held interests is to value it as an unencumbered freehold estate, with allocation of fair market value thus determined to be made thereafter among the various interests." 55 Haw. at 233, 517 P.2d at 14. This is the "undivided fee" rule. *Id.*

As the State points out, the "common sense" notion espoused by the rule is that "the division of a fee into separate interests cannot increase the amount of compensation that the condemnor has to pay for the taking of the fee." *United States v. 131.68 Acres of Land, More or Less, Situated in St. James Par., State of La.*, 695 F.2d 872, 875 (5th Cir. 1983).

In *People ex rel. Dept of Public Works v. Lynbar, Inc.*, 253 Cal.App.2d 870 (Cal. Ct. App. 1967) the court affirmed the decision of the lower court awarding compensation for a leasehold interest apart from the ownership of the land. The court recognized that "just compensation is based on the loss the

7

owner suffers rather than the benefit which the taker receives", rejected the undivided fee rule, and held that all of the owners or holders of an interest in land are entitled to receive the value of their respective estates or interests as a part of the valuation of the property as a whole.

In this case, the State argues that since Bridge was found to have failed to demonstrate it sustained damages, somehow this should preclude the Plaintiff-Appellant from presenting its damages that were sustained as a result of the improper reversion of land from urban designation to agricultural. In this respect, it is certain that the facts of the Bridge case demonstrated that Bridge actually profited from the improper reversion when DW paid Bridge a higher amount due to the delays caused by the reversion of land designation. As such, Bridge was unable to demonstrate that it sustained losses that required just compensation. On the other hand, since it was DW that sustained actual damages as a result of the improper reversion, DW sustained damages that are separate and distinct from Bridge. It is for this reason that the State's second argument on its cross-appeal must fail, namely that claim preclusion and issue preclusion applies to preclude DW from presenting its case against the State.

## 2. BRIDGE AND DW'S DAMAGES ARE SIGNIFICANTLY DIFFERENT SO THAT ISSUE AND CLAIM PRECLUSION WOULD NOT BE APPLICABLE IN THIS CASE

The State argues that since the issue as to whether there was a takings that requires just compensation has been litigated with Bridge, that DW should be precluded. We respectfully disagree since the damages sustained by Bridge and DW differ significantly.

DW alleges that the improper classification of land from urban to agricultural had a detrimental effect on its investment backed expectations, which includes lost profits, lost business opportunities, increased land acquisition costs due to the delay, inability to obtain financing and funding and damages to DW's business name and reputation as a developer of the project. All of these directly impacted Plaintiff's distinct investment backed expectations. Of note is the method in which DW obtained financing or funding for the project, namely the sale of fractional interest in land to Asian investors that was marketed and promoted by Capital Asia Group. The detailed history and how market conditions and proceedings before the LUC that ultimately resulted in a reversion order should be permitted to be introduced as evidence during trial. Although the Court will rule on the damages period, it is submitted that DW should be permitted to introduce the complete picture of the funding landscape and the cloud that hung over the

project during the LUC proceedings. Of course, this evidence is crucial to support DW's distinct investment backed expectations.

The impact of the reversion was that it completely eviscerated its funding program that generated real investment dollars into the project. The reversion of property spooked and scared all future investors, which effectively caused the project to come to a screeching halt, which deprived DW of the necessary funding to complete the development. As such, the economic impact of the reversion was fatal. Since the development of the infrastructure needed to be completed, the value of the property that remained was none to the developer. Further, the cost of the infrastructure can be absorbed into unit costs for each lot to be built cannot be achieved once the property was reverted to agricultural designation. DW suffered significant losses as a result of the reversion.

On the other hand, Bridge profited from the reversion. DW had to pay additional sums of monies due to the delay to avoid protracted litigation in this case. It is certain that Bridge profited and thus, it could not demonstrate that it sustained any losses that required just compensation by the State. As such, issue and claim preclusion should not attach to DW since DW's damages are distinctively different from Bridge and DW actually sustained damages.

### 3. THE DISTRICT COURT CORRECTLY HELD THAT ROBERT WESSELS CAN PROVIDE TESTIMONY BASED ON HIS PERSONAL KNOWLEDGE ALONG WITH HIS EXPERIENCE AND TRAINING

"Opinion testimony by lay witnesses is admissible if it is '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.'" *United States v. Goodheim*, 686 F.2d 776, 779 (9th Cir. 1982) (quoting Fed. R. Evid. 701). Lay witness testimony is admissible to prove damages. *Lightning Lube*, *Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (concluding the district court did not abuse its discretion by allowing lay opinion testimony as to damages, where it was based on knowledge of business); *U.S. ex rel. Technica*, *LLC v. Carolina Cas. Ins. Co.*, No. 08-CV-01673-H KSC, 2012 WL 1229885, at *5 (S.D. Cal. Apr. 12, 2012).

Lay witness testimony is limited to testimony "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. However, the Committee Notes state that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an

11

accountant, appraiser, or similar expert." Fed. R. Evid. 701, Advisory Committee Notes--2000 Amendments. "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id*.; *see*, *e.g*., *Lightning Lube*, *Inc*. *v*. *Witco Corp*., 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business).

Robert Wessels as the managing member of DW and CEO of Aina Lea Inc. is more than qualified to testify on damages and valuation issues since he has extensive experience in the field of real estate developments. In this respect, Mr. Wessels is very familiar with this particular development since 2005 since he was sole officer of the development and directly worked as a developer of the project. Further, Mr. Wessels has been a developer that has been working on building and developing properties for over sixty years. As such, Mr. Wessels have experience in every aspect of developing properties, including entitlements and permits, planning, construction, sale of the properties, investments, loans and all financial aspects of a development based on over sixty years of experience in this industry. Mr. Wessels supervised the

12

purchase of the site from Bridge Aina Le'a , LLC and the preparation of the business plan for the property. Thus, the District Court was correct in permitting Mr. Wessels to testify based on his experience and knowledge, in regard to the value of the development and without urban designation.

Dated:     Bayside, New York
                September 20, 2024

                                        Respectfully Submitted,

                                        ___*s/ Sang J. Sim*_____
                                        By SANG J. SIM, ESQ

13

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s) 24-1549, 24-1223**

I am the Appellate Counsel for Plaintiff-Appellant/Cross-Appellee DW AINA LE'A DEVELOPMENT, LLC.

**This brief contains 2,715 words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief [ x ] complies with the word limit of Cir. R. 32-1.

[x] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.


**Signature** _____s/ Sang J. Sim_____ **Date** _____9/20/2024_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Form 18. Certificate for Paper Copy of Electronic Brief

9th Cir. Case Number(s) **24-1549, 24-1223**

My name is **Sang J. Sim**. I certify that this brief is identical to the version submitted electronically on (date): **September 20, 2024**

**Signature** _____*s/ Sang J. Sim*_____ **Date** _____9/20/2024_____